

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 6, 2025

**BY ECF**
The Honorable Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    ***United States v. Shymell Ephron***, No. S1 24 Cr. 418 (MMG)

Dear Judge Garnett:

      The Government writes respectfully to request that, pursuant to Rule 12.2(c)(1)(B) of the Federal Rules of Criminal Procedure, the Court order a psychological interview and psychological testing of the defendant by the Government's rebuttal expert, and do so on an expedited basis to avoid any potential interference with the trial schedule. The Government's rebuttal expert is available to perform the evaluation during the week of February 17, 2025. Defense counsel has stated that they would evaluate their position on this application only after reviewing the Government's submission to the Court.

      Rule 12.2(c)(1)(B) states that if a defendant provides Rule 12.2(b) notice, "the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." This provision of Rule 12.2 was added specifically to authorize a court to order a psychological examination of a defendant "who intends only to present expert testimony on his or her mental condition on the issue of guilt." Fed. R. Crim. P. 12.2 Advisory Committee Notes to 2002 Amendments.

      Here, the defendant provided Rule 12.2(b) notice on November 15, 2024. The defendant also served a purported expert disclosure on the Government on January 25, 2025. This disclosure stated that the defendant intends to call Dr. Jason Krellman as an expert witness at trial, pursuant to Rule 12.2(b), to testify about certain issues that the defendant asserts without explanation will "negate the intent element of the charged crimes." The defendant attached to his expert disclosure the report that Dr. Krellman authored in connection with the defendant's motion to suppress, in which Dr. Krellman administered certain neuropsychological tests and reached certain conclusions regarding the defendant's cognitive functioning and his ability to make voluntary statements.

      Now that it is clear the defendant intends to put his cognitive functioning at issue through expert testimony, the Government should be permitted to assess and rebut that expert testimony. Federal Rule of Criminal Procedure 12.2(c)(1)(B) exists because the Government cannot be expected to take the defense expert's assessment at face value. Rather, the Government must be

allowed to assess the defendant's cognitive functioning through its own independent interview and independent psychological testing. *See, e.g., United States v. Harding*, 219 F.R.D. 62, 63 (S.D.N.Y. 2003) ("A defendant who puts his or her mental condition in issue and offers expert testimony to that end is estopped to deprive the government of a like examination ...."); *see also United States v. Byers*, 740 F.2d 1104, 1114 (D.C. Cir. 1984) ("Ordinarily the only effective rebuttal of psychiatric opinion testimony is contradictory opinion testimony...."). Courts routinely grant Government requests for rebuttal examinations under Rule 12.2(c)(1)(B) in similar circumstances. *See, e.g., United States v. Northington*, 2012 WL 3279197, at *2 (E.D. Pa. Aug. 10, 2012) (rebuttal government examination ordered when defense noticed intent to offer mental defect evidence during the punishment phase of a death penalty case); *United States v. Walker*, 2010 WL 2976049, at *6 n.5 (E.D. Va. July 28, 2010) (in a fraud case, rebuttal government examination ordered after the defendant served a Rule 12.2(b) notice); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1239-40 (D.N.M. Jan. 14, 2008) (in a death penalty case, concluding that "if [the defendant] files notice of his intent to introduce expert evidence on his mental condition, [the court] will permit the Government's experts to conduct a pretrial examination of him"); *see also United States v. Baisden*, 886 F. Supp. 22 1088, 1092 (N.D. Iowa 2012) (in a non-death penalty bank robbery case not squarely governed by Rule 12.2, the court relied by implication on Rule 12.2 concepts to conclude that, when the "defendant has elected to put at issue his mental condition at the time of the offenses," the "defendant cannot deprive the Government of the opportunity to explore and address the issue, if it so chooses").[1]

The Government therefore requests that its neuropsychological expert be permitted to conduct an interview and perform neuropsychological tests on the defendant. The specific neuropsychological tests the Government proposes to have its rebuttal expert conduct are as follows:



---

[1] The Government does not intend to offer into evidence any "statement made by [the] defendant in the course of any [Rule 12.2(c)(1)(B)] examination," any expert testimony based on such a statement, or any "other fruits" of such a statement unless the defendant first calls Dr. Krellman or another Rule 12.2(b) expert witness during his case-in-chief. Fed. R. Crim. P. 12.2(4).

February 6, 2025
Page 3 of 6



The Government's expert is available to conduct the interview and testing during the week of February 17, 2025, which would give the expert sufficient time to provide a report in advance of trial.

During the parties' meet-and-confers on this issue, defense counsel raised two procedural limitations that they believe should be placed on the Government's rebuttal interview and testing. First, defense counsel believes that the Government's rebuttal expert's testing should be limited to the tests Dr. Krellman performed. The requested tests listed above are intended to satisfy that limitation with the minor additions noted above, but the Government reserves the right to revisit this issue after the rebuttal expert's initial evaluation.

Second, defense counsel has requested to be present for the Government's rebuttal interview and testing of the defendant or that the rebuttal interview and testing be videotaped or otherwise recorded. The Government would consent to defense counsel's being present for the rebuttal interview of the defendant but not for the separate neuropsychological testing session. Courts often reject requests for defense counsel to be present for, or videotape, Rule 12.2(c)(1)(B) rebuttal testing because those conditions are unduly "intrusive and could have detrimental effects on the testing process." *See, e.g.*, *United States v. Northington*, 2012 WL 4024944, at *7-8 (E.D. Pa. Sept. 12, 2012). The neuropsychological testing that Dr. Krellman performed, and that the Government's expert intends to perform, is subject to manipulation and coaching. For that reason, neuropsychologists are ethically bound to protect the integrity of their testing methods by excluding unnecessary observers and refusing to record the administration of the tests. Indeed, there is no indication in Dr. Krellman's report that he conducted his neuropsychological testing of the defendant with defense counsel present or while being videotaped.

To the extent defense counsel's requests to be present for, or to videotape, the rebuttal testing arise from a concern about the defendant's Fifth Amendment right against self-incrimination, that concern is already addressed by Rule 12.2(c)(4), "which precludes the use of any statement made by a defendant during the course of a mental health examination, except on an issue regarding defendant's mental condition." *Id.* at *7. Likewise, the Sixth Amendment does not require defense counsel to be present for the rebuttal examination or for such examination to be videotaped because counsel will have been "informed of the 'nature and scope' of the examination" and can therefore adequately counsel the defendant about the potential benefits and drawbacks of submitting to such an examination. *Id.* (quoting *Buchanan v. Kentucky*, 483 U.S. 402, 424-25 (1987)); *accord United States v. Mills*, 385 F. Supp. 3d 566, 571-76 (E.D. Mich. 2019) (denying requests for the presence of counsel during, and videotaping of, the Government's neuropsychological testing in light of "the current state of the scientific community's view regarding the potential influence video recording may have on an examinee's performance on neuropsychological tasks, as well as the fact that [the defendant's] Fifth and Sixth Amendment rights will not be violated by the absence of defense counsel during the neuropsychological testing").

Finally, the Government again requests that the Court order defense counsel promptly to disclose under Rule 16(b) the "extensive educational, medical, and mental health records" that Dr. Krellman's report says were provided to him by defense counsel. The Government also requests

that the defense produce Dr. Krellman's full notes and raw data underlying his neuropsychological testing so that the Government can properly cross-examine him and prepare its rebuttal analysis.[3]

Defense counsel have indicated that they are willing to provide the records Dr. Krellman reviewed only if the Government agrees to a protective order that would place certain restrictions on the Government's dissemination and use of the records. The Government does not intend to publicly disclose any such information and therefore does not object to restrictions on the public disclosure of the information contained in the defense's records. But defense counsel also proposes to restrict the Government's *use* of the records they chose to rely upon to (a) preparing any challenges to Dr. Krellman's proffered testimony; (b) preparing any cross-examination of Dr. Krellman; (c) preparing for any Rule 12.2(c)(1)(B) evaluation of the defendant; or (d) otherwise preparing evidence to rebut the defense's Rule 12.2(b) evidence. The Government is not aware of any legal authority restricting its *use* of records relied upon by the defense. The Government has never attempted to place any reciprocal restrictions on the defense team's use of the records the Government has produced. The Government should be entitled, for example, to use those records during potential cross-examination of the defendant.

To be sure, Rule 12.2(c)(4) restricts how statements a defendant makes during a Rule 12.2(c)(1)(B) rebuttal examination may be used by the Government. But that restriction does not extend to *documents* that the defendant's expert reviewed and relied upon to form a Rule 12.2(b) opinion. That is because Rule 12.2(c)(4) exists to "accurately reflect the Fifth Amendment considerations at play" when a defendant is required to make potentially incriminating statements during a Rule 12.2(c)(1)(B) rebuttal examination that is compelled by a court order. Fed. R. Crim. P. 12.2 Advisory Committee Notes to 1983 Amendments. Those same Fifth Amendment self-incrimination protections do not apply to the educational, medical, and mental health documents that defense counsel supplied to Dr. Krellman. *See, e.g.*, *Fisher v. United States*, 425 U.S. 391, 401 (1976) ("We cannot cut the Fifth Amendment completely loose from the moorings of its language, and make it serve as a general protector of privacy a word not mentioned in its text and a concept directly addressed in the Fourth Amendment. We adhere to the view that the Fifth Amendment protects against compelled self-incrimination, not (the disclosure of) private information." (internal quotation marks omitted)).

Accordingly, the Government respectfully requests that the Court issue an order, pursuant to Rule 12.2(c)(1)(B), (1) permitting the Government's rebuttal expert to conduct the neuropsychological interview and tests listed above, (2) precluding defense counsel from physically attending or videotaping the Government expert's rebuttal neuropsychological testing,

---

[3] The Government is prepared to do the same for its rebuttal expert's notes and raw data. Indeed, with respect to the Government's DNA expert, in response to defense requests, the Government has produced all data underlying its expert's opinion, including the mechanical files that have allowed the defense team to fully recreate the DNA expert's underlying data and conclusions.

and (3) requiring defense counsel to produce promptly all records supplied to Dr. Krellman and Dr. Krellman's underlying notes and data supporting his testing conclusions.

      Respectfully submitted,

      DANIELLE R. SASSOON
      United States Attorney

By:   /s/_____
      Ryan W. Allison
      Lisa Daniels
      Michael R. Herman
      Assistant United States Attorneys
      Southern District of New York
      (212) 637-2474 / -2955 / -2221

cc:     Defense counsel (by ECF)